**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PETER MANNING, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> PAREXEL INTERNATIONAL CORPORATION, JOSEF H. VON RICKENBACH, MAYKIN HO, A. DANA CALLOW, JR., PATRICK J. FORTUNE, ELLEN M. ZANE, CHRISTOPHER J. LINDOP, RICHARD L. LOVE, and EDUARD E. HOLDENER, <br><br> Defendants. | Case No. 1:17-cv-11376 <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Peter Manning ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of PAREXEL International Corporation, ("PAREXEL" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with PAREXEL, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Merger") between PAREXEL and Pamplona Capital Management LLP ("Pamplona").

2. On June 19, 2017, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which each share of common stock of

PAREXEL will automatically be cancelled and will cease to exist, and will thereafter represent the right to receive $88.10 in cash (the "Merger Consideration"). The approximate value of the transaction is $5 billion, including PAREXEL's net debt.

3.     On July 14, 2017, in order to convince PAREXEL stockholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading preliminary Schedule 14(a) Proxy Statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     While Defendants are touting the fairness of the Merger Consideration to the Company's stockholders in the Proxy, they have failed to disclose certain material information that is necessary for stockholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the Proxy incomplete and misleading.

5.     In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for the Company; and (ii) the valuation analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in support of their fairness opinion.

6.     It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's stockholders prior to the forthcoming stockholder vote, so that they can properly exercise their corporate suffrage rights.

7.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 and Regulation G, 17 C.F.R. § 244.100. Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed below is disclosed to PAREXEL

stockholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District; (ii) PAREXEL is incorporated under the laws of Massachusetts; and (iii) PAREXEL has its principal place of business in Massachusetts.

## PARTIES

11. Plaintiff is, and at all relevant times has been, a PAREXEL shareholder.

12. Defendant PAREXEL is incorporated in Massachusetts and maintains its principal place of business at 195 West Street Waltham, Massachusetts 02421. Founded in 1983, the Company supports the pharmaceutical, biotechnology, and medical device industries by providing clinical research, medical communications, consulting, commercialization and informatics, and technology services. PAREXEL is listed on NASDAQ under the symbol "PRXL."

13. Individual Defendant Josef H. von Rickenbach founded PAREXEL in 1982 and has served as the Company's Chairman and Chief Executive Officer since 1983.

14. Individual Defendant Maykin Ho has served as a director of the Company since August 2015.

15. Individual Defendant A. Dana Callow, Jr. has served as a director of the Company since June 1986.

16. Individual Defendant Patrick J. Fortune has served as a director of the Company since June 1996.

17. Individual Defendant Ellen M. Zane has served as a director of the Company since July 2006.

18. Individual Defendant Christopher J. Lindop has served as a director of the Company since October 2006.

19. Individual Defendant Richard L. Love has served as a director of the Company since September 2002.

20. Individual Defendant Eduard E. Holdener has served as a director of the Company since January 2008.

21. The Individual Defendants and PAREXEL may collectively be referred to as "Defendants." Each of the Individual Defendants herein is sued individually, and as an aider and abettor, as well as in his or her capacity as an officer and/or director of the Company, and the liability of each arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein

## **CLASS ACTION ALLEGATIONS**

22. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of PAREXEL (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23. This action is properly maintainable as a class action because:

   a. The Class is so numerous that joinder of all members is impracticable. As of July 10, 2017, there were approximately 51,091,275 shares of PAREXEL common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of PAREXEL will be ascertained through discovery;

   b. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

   i) whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

   ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

   iii) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading Proxy.

      c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

      d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

      e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

      f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

      g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## **SUBSTANTIVE ALLEGATIONS**

**I.    The Merger Consideration Appears Inadequate in Light of PAREXEL's Recent Financial Performance and Growth Prospects**

24.    PAREXEL is a biopharmaceutical services company headquartered in Waltham, Massachusetts. The Company provides a range of expertise in clinical research, clinical logistics, medical communications, consulting, commercialization, and technology products and services to pharmaceutical, biotechnology and medical device industries. The Company operates through

three segments, including: (i) Clinical Research Services, (ii) PAREXEL Consulting Services, and (iii) PAREXEL Informatics.[1]

25. On June 20, 2017, the Company and Pamplona announced the Proposed Merger in a joint press release which states, in pertinent part:

> BOSTON and NEW YORK, June 20, 2017 – PAREXEL International Corporation (NASDAQ: PRXL), a leading global biopharmaceutical services provider, and Pamplona Capital Management, LLP (Pamplona) today announced that they have entered into a definitive agreement under which Pamplona will acquire all of the outstanding shares of PAREXEL for $88.10 per share in cash in a transaction valued at approximately $5.0 billion, including PAREXEL's net debt.
>
> The purchase price represents a 27.9% premium to PAREXEL's unaffected closing stock price on May 5, 2017, the last trading day prior to published market speculation regarding a potential transaction involving the Company; a 38.5% premium to the unaffected 30-day volume weighted average closing share price of PAREXEL's common stock ended May 5, 2017; and a 23.3% premium to the Company's undisturbed 52-week high.
>
> "Today's announcement is the culmination of a comprehensive review of the opportunities available to the Company, including interest solicited and received from multiple parties with the assistance of independent financial and legal advisors. Having considered these opportunities, the PAREXEL Board of Directors unanimously determined that this all-cash transaction and the significant, certain value it provides is in the best interest of PAREXEL shareholders, as well as our company," said Josef von Rickenbach, Chairman and Chief Executive Officer of PAREXEL. "PAREXEL benefits from a strong operating foundation with expertise and resources to support our clients in their clinical trials around the world. However, as our results over the past year show, the market for biopharmaceutical services is evolving. We believe the more flexible corporate structure afforded by this transaction will better position us to advance PAREXEL's strategy in light of these realities and to shape the Company to best capitalize on our exciting market opportunities."
>
> Mr. von Rickenbach continued, "Pamplona has significant experience in the pharmaceutical and healthcare industries, and we are pleased to have their support as we work to realize the long-term opportunity for PAREXEL. This transaction and the meaningful value it delivers for our shareholders is a testament to the 19,600 employees who help our clients advance the development and commercialization of new medical therapies worldwide, and we will remain focused on providing our clients with the service and support that have long set PAREXEL apart."

---

[1] http://www.reuters.com/finance/stocks/companyProfile?symbol=PRXL.O.

>Jeremy Gelber, M.D., Partner at Pamplona, said, "We have great respect for the global leadership that Josef and the talented employees at PAREXEL have built. We are excited to partner with a company and a team that have a strong track record in helping to successfully navigate the complexities innate to the biopharmaceutical industry and bring new therapies to market."
>
>The Merger Consideration appears inadequate in light of the Company's financial performance and prospects for future growth. Indeed, the Company has reported double-digit EBITDA growth as well as consistently positive earnings per share growth since 2013.

26. It appears that PAREXEL is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's stockholders. It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's stockholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

## II. The Materially Incomplete and Misleading Proxy

27. On July 14, 2017, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger. The Proxy solicits the Company's stockholders to vote in favor of the Proposed Merger. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

28. First, the Proxy fails to provide material information concerning the Company's financial projections. The Proxy provides projections for certain non-GAAP (Generally Accepted Accounting Principles) financial measures, including Adjusted Net Income, Adjusted EBITDA,

8

Unlevered Free Cash Flow ("UFCF") and Adjusted EPS. Proxy, 57. Despite disclosing that each of the figures above were non-GAAP measures the Proxy fails to provide the values of the line items used to calculate used in their respective calculations. *See* Proxy, 57 (defining the non-GAAP financial measures without providing the values of the line items disclosed). Moreover, the Proxy fails to provide a reconciliation of the non-GAAP financial measures to each measures respective most comparable GAAP measure.

29. First, the Proxy fails to disclose the values of the line items used to calculate Adjusted Net Income, including: (i) acquisitions and integration charges and tax thereon; (ii) charges related to the impairment of internally developed software; (iii) severance charges; (iv) facility costs; (v) changes related to the Company's restructuring program, and (vi) a loss on fair value in connection with the Company's accelerated share repurchase program and taxes thereon. Nor does the Proxy provide a reconciliation of Adjusted Net Income to its most comparable GAAP financial metric. Proxy, 57.

30. Second, The Proxy fails to reconcile Adjusted EBITDA to its most comparable GAAP financial measure, or provide the values of the line items used in its calculation, including: (i) interest expense; (ii) income taxes; and (iii) depreciation and amortization. *Id*.

31. Third, the Proxy fails to reconcile UFCF to its most comparable GAAP financial measure, or provide the values of the line items used in its calculation, including: (i) depreciation and amortization; (ii) tax expense; (iii) capital expenditures; (iv) changes in working capital; and (v) the post-tax restructuring charge for the fiscal year ending June 30, 2018. Proxy, 58.

32. Last, the Proxy discloses that Adjusted EPS "reflects expected repurchases by the Company each fiscal year of shares of common stock of the Company with a value equivalent to

50% of the Company's estimated levered free cash flow for that fiscal year," but fails to define "levered free cash flow", disclose its values, or provide any form of reconcilaiton.  Proxy, 58.

33.     When a company discloses non-GAAP financial measures in a Proxy, the Company must also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.

34.     Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with stockholders.  The former SEC Chairwoman, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as PAREXEL included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.   Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.  And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[2]

---

[2]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-*

35. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[3] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[4]  For example, "certain adjustments may violate Rule 100(b) of Regulation G because they cause the presentation of the non-GAAP measure to be misleading.  For example, presenting a performance measure that excludes normal, recurring, cash operating expenses necessary to operate a registrant's business could be misleading."  *Id*. at Question 100.01.  Non-GAAP measures that are presented inconsistently between periods also may be misleading if the change and reason for the change is not disclosed. *Id.* at Question 100.02.  Moreover, companies that utilize the non-GAAP measure "free cash flow" must clearly describe how this measure is calculated and provide a reconciliation.  *Id.* at Question 102.07.

36. The omission of the aforementioned information renders the projections, and accompanying footnotes, set forth on pages 57-58 of the Proxy materially false and/or misleading, which Defendants must correct, as required by the SEC, by providing a reconciliation, and

---

*GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.
[3]     *See, e.g*., Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.
[4]     *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

consequently the values of the line items, of each non-GAAP measure to its most comparable GAAP measure.

37.     At the very least, the Company must disclose the line item projections for the financial metrics that were used to calculated the non-GAAP measures.  Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading.  Indeed, the Defendants acknowledge that disclosing non-GAAP projections may mislead stockholders in the Proxy: "These non-GAAP financial measures should not be considered as an alternative to operating income or net income as measures of operating performance, or as an alternative to cash flows, as a measure of liquidity. They also should not be considered in isolation from, or as a substitute for, financial information presented in accordance with GAAP."  Proxy, 57.

38.     Clearly, shareholders would find this information material since the Board's unanimous recommendation that shareholders vote in favor the Proposed Merger was based, in part on the following:

- The Board considered its belief that the value offered to Company shareholders in the merger was more favorable to Company shareholders than the potential value of remaining an independent public company[.] Proxy, 45.

- The Board considered certain limited prospective forecasts for the Company prepared by Company management, which reflect an application of various commercial assumptions of Company management.

Proxy, 45.

39.     In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholders meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a

fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder)

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. SEC Regulation G has two requirements: (1) a general disclosure requirement; and (2) a reconciliation requirement. The general disclosure requirement prohibits "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading*." 17 C.F.R.

13

§ 244.100(b). The reconciliation requirement requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a). As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100.

44. The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

45. Defendants have issued the Proxy with the intention of soliciting stockholders support for the Proposed Merger. Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for the Company; and (ii) the valuation analysis performed by Goldman Sachs in support of their fairness opinion.

46. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

47. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed

Merger; indeed, the Proxy states that Goldman Sachs reviewed and discussed its financial analyses with the Board, and further states that the Board considered both the financial analyses provided by Goldman Sachs as well as its fairness opinion and the assumptions made and matters considered in connection therewith.

48. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to review Goldman Sachs' analyses in connection with their receipt of the fairness opinion, question Goldman Sachs as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

49. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

50. PAREXEL is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

51. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and

omissions are not corrected prior to the vote on the Proposed Merger.

52.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of PAREXEL within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of PAREXEL, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

57. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

60. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Enjoining Defendants and all persons acting in concert with them from proceeding

with the stockholders vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.      Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 26, 2017

**MATORIN LAW OFFICE, LLC**

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

By:     /s/ Mitchell J. Matorin
        Mitchell J. Matorin (BBO# 649304)
        18 Grove Street, Suite 5
        Wellesley, MA 02482
        (781) 453-0100

        *Counsel for Plaintiff*